UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 12, 2014

LETTER TO COUNSEL:

    RE:    *Jacqueline Underwood o/b/o A.T. v. Commissioner, Social Security Administration*; Civil No. SAG-13-2100

Dear Counsel:

On July 22, 2013, Plaintiff Jacqueline Underwood, on behalf of her minor son, A.T., petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 17). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Ms. Underwood's motion and grant the Commissioner's motion. This letter explains my rationale.

Ms. Underwood filed her claim on behalf of A.T. on March 31, 2010, alleging a disability onset date of November 17, 2009. (Tr. 108-14). Her claim was denied initially and on reconsideration. (Tr. 62-67). A hearing was held on March 5, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 34-59). Following the hearing, the ALJ determined that A.T. was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-29). The Appeals Council denied Ms. Underwood's request for review, (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ determined that A.T. suffered from the severe impairments of laryngomalacia status-post supraglottoplasty and asthma. (Tr. 19). However, the ALJ concluded that A.T.'s impairments did not meet or medically equal the severity of any listing, nor did A.T.'s impairments functionally equal the severity of any listing. (Tr. 20-29). Due to A.T.'s age, the ALJ further concluded that he has not exhibited limitations in most of the relevant functional equivalence domains (which are generally inapplicable to infants and young toddlers). (Tr. 23-29). Essentially, then, the case turns on whether A.T.'s impairments meet or equal the listings.

Ms. Underwood raises two primary arguments on appeal. First, she contends that the ALJ failed to determine whether A.T.'s asthma, reactive airway disease, or laryngomalacia were medically equivalent to a listing. Pl.'s Mot. 7. Second, she argues that the ALJ erred by failing to obtain the opinion of a medical expert. Pl.'s Mot. 12. Each argument lacks merit.

Ms. Underwood first argues that, while the ALJ considered whether A.T.'s impairments met the specific criteria of Listing 103.03, the ALJ failed to address whether A.T.'s impairments

Case 1:13-cv-02100-SAG   Document 18   Filed 09/12/14   Page 2 of 4

*Jacqueline Underwood o/b/o A.T. v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2100
September 12, 2014
Page 2

were medically *equivalent* to Listing 103.03. An impairment is medically equivalent to a listing if it is at least equal in severity and duration to the criteria of any listed impairment. *See* 20 C.F.R. § 416.926(a). If the claimant has an impairment described in the listing, but the claimant (1) does not exhibit one or more of the findings specified in the listing; or (2) exhibits all of the findings, but one or more findings is not as severe as specified in the particular listing, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the listing's required criteria. 29 C.F.R. § 416.926(b)(1)(i)-(ii).

Ms. Underwood has not alleged any particular method for establishing medical equivalence. However, she appears to argue that the combination of A.T.'s respiratory conditions equals the criteria of Listing 103.03(B) or (C). Listing 103.03 pertains to asthma. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part B § 103.03. Subsection (B) of the listing requires a showing of "attacks (as defined in 3.00C) in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months, or at least six times a year." *Id.* at § 103.03(B). The subsection further requires that a period of 12 months must be used to determine the frequency of attacks, and that each inpatient treatment hospitalization for longer than 24 hours for control of asthma counts as two attacks. *Id.* "Attacks" are defined in Listing 3.00(C) as follows:

> Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.

*Id*. at Part A § 3.00(C).

The medical evidence of record demonstrates that in the 12-month period between December, 2009 and December, 2010, A.T. was twice hospitalized for respiratory distress. (*See* Tr. 220-59). On December 30, 2009, A.T. was admitted to Children's National Medical Center after developing increased work of breathing, and after failing to respond to albuterol and racemic epinephrine treatment. (Tr. 247). A.T. was placed on oxygen and his status improved. (Tr. 247-51). Doctors diagnosed A.T. with bronchitis. (Tr. 250). On February 9, 2010, A.T. presented to Children's National Medical Center with "one day history of increased work of breathing, tachypnea, increased above baseline retractions, increased stridorous noise…" (Tr. 227). On examination, stridorous breathing without respiratory distress was noted. (Tr. 229). Both hospital stays lasted more than 24 hours. However, in March of 2010, A.T. underwent supraglottoplasty, and his laryngomalacia resolved significantly after that surgery. (Tr. 478-90). After the surgery, he had only one additional two-day hospitalization, in January of 2011, for a viral illness which included fever, vomiting, and diarrhea, in addition to respiratory symptoms. (Tr. 393-96).

*Jacqueline Underwood o/b/o A.T. v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2100
September 12, 2014
Page 3

While Ms. Underwood cites other incidents in which A.T.'s respiratory symptoms "required physician intervention," Pl.'s Mot. 8, the intervention required did not amount to "intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting" as required to establish an "attack" under the governing definition. Instead, as the ALJ noted, "a majority of Dr. Clark's records concern well-child checkups and treatment of cough, cold, and ear infections." (Tr. 19). A.T. was sent home from his doctor's office, occasionally with a new prescription for at-home medication. I agree with the ALJ that the aforementioned medical evidence does not meet the criteria of Listing 103.03(B).

The same is true for Listing 103.03(C). The ALJ correctly analyzed the specific criteria of the listing and highlighted the medical evidence that did not comport with the listing's requirements. (*See* Tr. 21). For instance, the threshold requirement of subsection (C) provides that a claimant must demonstrate "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part B, § 103.03(C). While it appears that A.T. is somewhat prone to contracting viral illnesses, the records do not reflect persistent wheezing or the absence of extended symptom-free periods between those illnesses. Moreover, the evidence illustrates that A.T. uses an albuterol inhaler on an as-needed basis, and there is no evidence of required "daytime and nocturnal use" of the bronchodilators.[1]

Although the specific criteria of the listings were not met, Ms. Underwood contends that the ALJ should have found A.T.'s symptoms medically equivalent to a listing. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); *see also* 20 C.F.R. § 404.1526. If the claimant has an impairment that is described in the listing, but (1) does not meet each criteria specified in the listing, or (2) exhibits all of the required findings, but lacks the required severity level for each finding, the claimant can show equivalency by proving other findings related to the impairment that are at least of equal medical significance to the listed criteria. 20 C.F.R. § 404.1526(b)(1). Alternatively, if the claimant has a combination of impairments which do not individually meet any listing, the claimant can establish equivalency by establishing findings of at least equal medical significance to the criteria contained in the most analogous listing. 20 C.F.R. § 404.1526(b)(3). Importantly, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, 493 U.S. at 531. Equivalent evidence for each of the criteria must be established.

The burden was on Ms. Underwood to show equivalent evidence for all of the criteria in

---

[1] While the ALJ erred in stating that A.T. had not required home nebulizer treatments, (Tr. 22), and did not address the frequency or duration of A.T.'s prescriptions for corticosteroids, because the other criteria of Listing 103.03(C) were not met or equaled, such error is harmless.

Case 1:13-cv-02100-SAG   Document 18   Filed 09/12/14   Page 4 of 4

*Jacqueline Underwood o/b/o A.T. v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2100
September 12, 2014
Page 4

one of the listings. Essentially, Ms. Underwood aggregates A.T.'s medical appointments and hospitalizations and argues that the sheer amount of medical treatment makes A.T.'s impairment equivalent to the listings.  Pl.'s Mot. 8-9.  I disagree because many of A.T.'s appointments are not for respiratory issues relating to asthma or laryngomalacia, but for the type of viral illnesses common among young children.  Moreover, two non-examining state agency physicians opined, after reviewing A.T.'s medical records, that the listings had not been met or equaled.  (Tr. 260-65, 346-51).  Finally, as the ALJ noted, A.T.'s own physician opined that his condition had improved with surgery and that, in any event, laryngomalacia usually resolves spontaneously in early childhood with little if any long-term effect.  (Tr. 267).  Accordingly, I find that substantial evidence supports the ALJ's conclusion in this case.

Ms. Underwood next argues that, pursuant to Social Security Ruling ("SSR") 96-6p, the ALJ erred by failing to obtain the opinion of a medical expert on the issue of medical equivalency.  Pl.'s Mot. 12.  She contends that state agency physicians never considered whether A.T.'s impairments met or equaled a listing, and that they also did not consider additional medical evidence, which arguably establishes that A.T. satisfies listing criteria.  *Id.*  In fact, however, two state agency physicians completed Childhood Disability Evaluation Forms, dated July 29, 2010 and December 6, 2010, respectively.  *See* (Tr. 260-65, 346-51).  Both physicians concluded that A.T.'s impairments did not meet or medically equal the listings.  *Id.*  An ALJ is only required to obtain an updated opinion from a medical expert regarding medical equivalence to a listing when: (1) no additional medical evidence is received, but in the opinion of the ALJ or the Appeals Council, the symptoms, signs, and laboratory findings suggest that a finding of equivalence is reasonable; or (2) when additional medical evidence is received, and that in the opinion of the ALJ or the Appeals Council, the evidence may change the state agency consultant's finding that the claimant's impairment is not medically equivalent to any listing.  SSR 96-6p, 1996 WL 374180, at *3-4.  In this case, the ALJ did not obtain an updated opinion of a medical expert because he did he not find evidence suggesting that a finding of equivalence was reasonable, nor did he find that the additional evidence, to which Ms. Underwood refers, dictated a change in the state agency physicians' original determination.  Accordingly, there was no need to obtain the opinion of a medical expert.

For the reasons set forth herein, Ms. Underwood's motion for summary judgment (ECF No. 15) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 17) will be GRANTED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge